IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BAPTIST HEALING HOSPITAL TRUST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| PENSION BENEFIT GUARANTY ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

## PARTIES AND JURISDICTION

1. The Baptist Healing Hospital Healing Trust (the "Healing Trust") is a Tennessee nonprofit corporation, created pursuant to the Tennessee Nonprofit Corporation Act, T.C.A. § 48-51-101, *et seq.*, with its principal place of business in Nashville, Tennessee. The Healing Trust is a charitable grant-making foundation, and its mission is the sacred work of fostering healing and wholeness for vulnerable populations through access to compassionate and affordable healthcare, strategic investing, philanthropy, and advocacy. The Healing Trust has been in continuous existence for over fourteen years. It is governed by a Board of Trustees of involved and interested private citizens charged with the responsibility of achieving this mission.

2. Pension Benefit Guaranty Corporation ("PBGC") is a wholly owned U.S. government corporation. It is an agency of the federal government that administers the defined benefit pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. PBGC guarantees the payment of certain pension benefits upon the termination of a single-employer pension plan covered by Title IV of ERISA, but not otherwise. PBGC does not have authority to act in that or any other role if

4811-9687-5308.1

a single-employer pension plan is not covered by ERISA.  PBGC's authority to act in relation to, or on behalf of, a pension plan arises solely from the plan falling within ERISA.  PBGC is not authorized to administer or act on behalf of pension plans that are exempt from ERISA.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2201 because an actual controversy involving substantial and concrete rights exists between the parties to this action, in which the Healing Trust's present interests are affected.  Additionally, this Court has jurisdiction under 28 U.S.C. § 1331 because the ERISA status of a pension plan at issue -- a pension plan established by the former Baptist Hospital for its employees, as defined below -- is a question of federal law over which the federal courts have original jurisdiction.  This Court also has jurisdiction pursuant to 29 U.S.C. § 1303(f) because a contract pursuant to which PBGC has asserted a contractual claim against the Healing Trust also permits the Healing Trust to assert the rights of the Baptist Pension Plan's former sponsor.

4. Venue is appropriate in this Court because the pension plan at issue was implemented and maintained within this District in Nashville, Tennessee.

## FACTS

5. Contrary to the mission for which the Healing Trust literally exists, PBGC is attempting to compel the Healing Trust to pay more than $100 million to its general fund for all ERISA-governed pension plans nationwide, ostensibly from which it would fund an asserted shortfall in a pension plan previously maintained by Baptist Hospital, a separate entity, for its employees (the "Baptist Pension Plan") prior to the sale of its assets to Ascension Health in 2001.  Specifically, PBGC is attempting to enforce an asserted guaranty it alleges the Healing Trust made in a 2001 Asset Purchase Agreement in which Baptist Hospital sold the assets of the

hospital ("APA").  PBGC has made a demand for arbitration of that claim under an arbitration provision provided in the APA, to which the Healing Trust has responded.

6. As a condition precedent to any purported contract claim on any asserted guaranty, however, PBGC must have the legal authority to demand funding on behalf of the Baptist Pension Plan and/or on behalf of itself, from the Healing Trust or any other source.  That requirement exists because its authority is limited by and arises solely from ERISA.  The Baptist Pension Plan was, at all relevant times, exempt from ERISA as a "church plan" as defined in ERISA § 414(e), and thus PBGC cannot lawfully proceed against the Trust under the arbitration it has attempted.

7. The APA under which PBGC has demanded arbitration does not address the Baptist Pension Plan's ERISA status or PBGC's lack of authority to administer the Baptist Pension Plan.  The arbitrator, who derives his authority solely from the APA, consequently is without jurisdiction to make any determination regarding PBGC's lack of authority to pursue the claim against the Healing Trust.  That issue is thus properly before this Court pursuant to 28 U.S.C. § 2201 as an actual and substantial controversy involving important interests.

8. To resolve this threshold issue, and pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, the Healing Trust seeks a declaration that the Baptist Pension Plan was, at all relevant times, a church plan exempt from ERISA.  Judicial resolution of this issue of federal law will likely be dispositive of the parties' underlying dispute because the Baptist Pension Plan's exempt status means PBGC is without statutory authority to pursue the action it is currently attempting against the Healing Trust.

*Baptist Hospital and the Baptist Pension Plan*

9. The former downtown Nashville hospital known for decades as Baptist Hospital has a rich and nearly century-long history as a church-run hospital. Originally founded in 1919 as "Protestant Hospital," it changed ownership in 1948 when it was transferred to the Tennessee Baptist Convention, and was later renamed "Baptist Hospital."

10. For decades until its most recent transfer, Baptist Hospital operated as a healing ministry of the Baptist church. Baptist Hospital's mission focused on providing exemplary healthcare services in a manner consistent with the religious doctrine and tenets of the Tennessee Baptist Convention. In accordance with its religious mission, Baptist Hospital provided pastoral care services and discounts to Baptist ministers and their families.

11. Throughout its existence, Baptist Hospital's leadership was aligned with its religious mission -- its board of directors was comprised of trustees each of whom was required to be active in a Baptist church.

12. Baptist Hospital established the Baptist Pension Plan for its employees 66 years ago in approximately 1949. It maintained the Baptist Pension Plan as a necessary part of furthering the healing ministries of the Tennessee Baptist Convention.

13. Long thereafter in 1974, the U.S. Congress enacted ERISA, which became effective in 1975. From its creation, ERISA has contained an exemption from coverage for employee pension plans sponsored by churches (or certain church-affiliated organizations), for the understandable purpose of limiting federal governmental intrusion into the missions and operations of churches and other qualifying church organizations. Plans exempt from ERISA's participation, vesting, and funding requirements under ERISA § 414(e) are defined as "church plans."

14. Under ERISA, a church plan sponsor can elect to be governed by ERISA's participation, vesting, funding, and other rules, but only by following a specific election process set out in ERISA and its implementing regulations. *See* ERISA § 410(d); 29 C.F.R. § 1.410(d)-1. That election procedure is the sole manner in which a church plan can become subject to ERISA.

15. Following the enactment of ERISA, the Baptist Pension Plan qualified as a church plan, and Baptist Hospital never elected to have the Baptist Pension Plan be governed by or subject to ERISA.

16. In 1986, Baptist Hospital partnered with Ascension Health ("Ascension"). Ascension is another religiously-affiliated hospital system. Both Baptist Hospital and Ascension had similar religious, healing missions, and their association was made in a joint venture to establish Middle Tennessee Medical Center in Murfreesboro, Tennessee.

17. Baptist Hospital and Ascension were pleased with the success of Middle Tennessee Medical Center, and in approximately 2000, when Baptist Hospital contemplated selling its assets to another hospital system to best fulfill its religious mission, it began similar discussions with Ascension. Those discussions ultimately culminated in an agreement for an asset sale between Baptist Hospital and Ascension.

### *The Baptist Pension Plan is Frozen in Preparation for its Termination*

18. In preparation for the sale of its assets to Ascension, Baptist Hospital froze the Baptist Pension Plan, meaning that no new employees were eligible to participate in it and no then-participating employees of Baptist Hospital accrued any additional service-related credits in the Plan.

19. The freezing of the Baptist Pension Plan was the first step by Baptist Hospital in the planned termination of that Plan. As of that date, the Baptist Pension Plan existed solely as a financial obligation of Baptist Hospital to those of its employees with vested benefits accrued during their employment, while Baptist Hospital, or its post-acquisition successor, could wind up and terminate the Baptist Pension Plan, at its discretion.

*The 2001 Sale of Baptist Hospital's Assets*

20. In 2001, Baptist Hospital sold its assets to Ascension and Ascension's local affiliate, Tennessee Health Corporation d/b/a St. Thomas Baptist Health Corporation ("St. Thomas") through the APA.

21. Baptist Hospital did so with the understanding that Ascension, as a Catholic-affiliated hospital system, had a similar religious healing mission, and would continue that religious mission following the sale of the hospital. Continuation of Baptist's religious healing mission was an agreed-upon term of the APA.

22. Baptist Hospital created a non-profit corporate successor, "BH1," for the primary purpose of winding up its affairs, including the termination of the now-frozen Baptist Pension Plan. BH1 retained part of the sales proceeds paid by Ascension.

23. BH1 continued to exist as a Tennessee nonprofit corporation. In fact, it continued to operate a two-bed hospital called the Baptist Women's Pavilion within the now Ascension-owned Baptist Hospital. BH1 affirmatively represented that it continued to operate in accordance with the religious mission of Baptist Hospital.

*The Creation of the Healing Trust*

24. The proceeds of the asset sale beyond those retained by BH1 to wind up its operations and fund the Baptist Pension Plan through its termination, were earmarked by Baptist

Hospital to be transferred to a Tennessee statutory foundation. That foundation -- the Healing Trust -- was created to utilize that portion of the consideration received for Baptist Hospital's assets to continue its healing mission, albeit in a different manner and through the foundation.

25.  Thus, after the asset purchased closed, the Healing Trust was gifted with the apportioned part of the sale proceeds.

26.  In the approximately fourteen years since the Healing Trust was established, it has faithfully administered the funds provided to it, and has provided millions of dollars in grants to nonprofit organizations across Middle Tennessee which fulfill the Healing Trust's mission. Over $1.7 million in grants were provided to 29 non-profit organizations in the fourth quarter of 2015 alone. Since the inception of the Trust, over $70 million dollars in such grants have been made.

27.  Following the 2001 sale of Baptist Hospital, BH1 did not wind up its affairs and terminate the frozen Baptist Pension Plan. Instead, it continued operating the Baptist Women's Pavilion and other nonprofit activities, until it filed for bankruptcy on December 28, 2012.

28.   BH1's post-acquisition operations did not affect the frozen Baptist Pension Plan. BH1 never attempted to "unfreeze" the Baptist Pension Plan, or to otherwise provide any benefit accruals under it to BH1 employees. The Baptist Pension Plan remained frozen in its pre-2001 acquisition status until it was ultimately terminated.

## COUNT I -- DECLARATORY RELIEF

29.  The Healing Trust hereby incorporates the allegations in paragraphs 1-28 as if fully set forth herein.

30.  The Baptist Pension Plan was a church plan as defined by ERISA § 414(e) when Baptist Hospital froze it in 2001 in anticipation of the sale of the hospital's assets and the wind up and termination of the Baptist Pension Plan.

31.  For purposes of determining the Baptist Pension Plan's ERISA status, its status is determined as of the date the plan was frozen.  From its creation until the plan was frozen, Baptist Hospital maintained the Baptist Pension Plan in accordance with and in furtherance of its religious mission, and in affiliation with the Baptist church.

32.  After the Baptist Pension Plan was frozen, participants no longer accrued benefits.  The Baptist Pension Plan existed solely as a financial obligation to participants with vested benefits which they accrued while working for Baptist Hospital.

33.  Regardless, the Baptist Pension Plan's post-acquisition sponsor (which was its intended "wind up" sponsor), BH1, as Baptist Hospital's successor in name, continued to exist as a religious organization until it began winding up its operations, ultimately in bankruptcy.  Even if BH1's religious affiliation were relevant, it was always a church organization (within the meaning of ERISA § 414).

34.  An actual and substantial controversy exists between the Healing Trust and PBGC because PBGC is presently seeking to collect more than $100 million in alleged funding obligations to the Baptist Pension Plan and is only able to make that claim pursuant to ERISA, which does not here permit PBGC to do so.

35.  The parties' respective rights and other legal obligations are fundamentally affected by the legal status of the Baptist Pension Plan as a church plan.  If the Baptist Pension Plan is an exempt church plan as the Healing Trust asserts, then PBGC has no statutory authority to pursue the Healing Trust in the arbitration or elsewhere, meaning that the declaratory relief sought resolves the issues that underlie parties' controversy.

36. This declaratory action accordingly serves a critical and precedential purpose in clarifying and largely governing the legal relations at issue between the Healing Trust and PBGC.

37. The limited issue upon which the Healing Trust seeks judicial declaratory relief turns on the interpretation and application of federal ERISA law on a topic where the law, while favorable to the Healing Trust's position, is being developed by federal courts, making this Court uniquely appropriate for resolution of this precedent legal issue.

38. This declaratory action will not improperly encroach on state court jurisdiction or state law because it addresses solely the status of a pension plan under ERISA and thus PBGC's ability to act against the Healing Trust.

39. This declaratory action is not contrary to, or in contravention of, federal deference to arbitration because the narrow issue upon which declaratory relief is sought -- the applicability of ERISA -- is not subject to arbitration under any arbitration provision.

WHEREFORE, the Healing Trust prays that the Court enter an Order granting the following relief to the Healing Trust:

1. A stay of the arbitration initiated by PBGC while this action proceeds;

2. A declaration that the Baptist Pension Plan was, at all times relevant, a "church plan" as defined by ERISA § 414(e), and that PBGC thus does not have the statutory authority under ERISA to pursue any purported rights on behalf of itself, the Baptist Pension Plan, or its sponsor, against the Healing Trust;

3. Reasonable attorneys' fees and costs incurred by the Healing Trust in pursuing this action; and

4. All other relief as the Court deems just and proper.

s/ Robert E. Boston
Robert E. Boston (TN BPR #9744)
James B. Bristol (TN BPR #019251)
John E. B. Gerth (TN BPR #024439)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219-8966
Telephone (615) 244-6380
Facsimile (615) 244-6804
bob.boston@wallerlaw.com
james.bristol@wallerlaw.com
john.gerth@wallerlaw.com

*Attorneys for the Baptist Healing Hospital Trust*
